JULY TERM, 1883, No. 191.                    JANUARY 23, 1884.

# The People's Passenger Railway Company *v.* Lauderbach.

1. In an action against a passenger railway company to recover damages for personal injuries alleged to have been caused, by the negligence of the defendant company, to a passenger in the car of another railway company running in the opposite direction, there was evidence that the arm of plaintiff rested on the window sill of the car, and his fingers projected. The defendant company requested the Court to charge that "if the plaintiff sat with his arm on the sill of the window, and suffered unconsciously his arm to slip out of the window, and he was injured, he cannot recover," and also that if the position of the arm was the cause of the injury, or contributed to it, the plaintiff could not recover. The Court declined so to charge unless the jury should find that the contributory negligence was the proximate cause of the injury. *Held*, that these points should have been affirmed without qualification.

2. Where a traveler puts his elbow or an arm out of a car window voluntarily without any qualifying circumstances impelling him to it, it must be regarded as negligence *in se;* and when this is the state of the evidence, it is the duty of the Court to declare the act negligence in law.

3. The unconsciousness of the projection of the arm would not affect the legal result of the actual projection of the arm beyond the window.

4. Pittsburgh and Connellsville Railroad Company *v.* McClurg, 6 P. F. Sm., 294, followed.

5. The mere resting of the arm on the window sill without protrusion cannot be regarded in itself as an act of contributory negligence.

6. Germantown Passenger Railway Company *v.* Brophy, 14 W. N. C., 213, followed.

7. The loss of earning power is an element of damage which may be considered; but the loss of income, which means profits of a business fluctuating widely, and of possible profits in a special contract, cannot be regarded as a legitimate basis of recovery.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

[The People's Passenger Railway Company *v.* Lauderbach.]

Error to the Court of Common Pleas, No. 4, of *Philadelphia County.*

Case by James W. Lauderbach against The People's Passenger Railway Company to recover damages for personal injuries. Plea, not guilty.

On the trial in the court below, before ELCOCK, J., the following facts appeared:

On Callowhill street, west of Twenty-third street in the city of Philadelphia, there are two passenger railway tracks, one owned and used by the Hestonville, Mantua and Fairmount Passenger Railway Company (commonly called the Race and Vine Street Company) and the other by the People's Passenger Railway Company. The Hestonville company's cars run west, and the cars of the defendant company run east. West of Twenty-third street the tracks of these two railway companies are laid parallel and near together for a short distance. At the narrowest point the tracks are 11½ inches apart, and the cars moving in opposite directions could not pass at this point without the eaves of one rubbing and scraping the other.

On July 26, 1880, plaintiff was a passenger in a car of the Hestonville company, which was proceeding out Callowhill street west of Twenty-third street. He was sitting sideways at the rear end of the car, with his left elbow resting on the window sill and his hand up, grasping or resting against the upright window frame. The plaintiff testified that "the ends of my fingers might have been approaching towards the outside, but the thumb and hand were inside."

On cross-examination he said: "I can't tell whether the ends of my fingers reached the outside or not." * * "I am confident they did not project. No part of my hand or arm was outside." * * * "I say they were inside, but they might have reached towards the outside."

William Osner testified that "his fingers were on the sill, with his hand resting on the upright—on the platform of this sill resting. He had to clasp with his thumb inside, and about that much outside," (indicating.) Upon being recalled, witness said: "It would not put them out, I don't think, three eighths of an inch."

The car in which plaintiff was riding stopped to take on a passenger just before reaching the place where the tracks most nearly approach each other. Defendant's car was standing on the other side of the narrow place. The driver of the car in which plaintiff was riding was

called by plaintiff, and testified that the defendant's car started after he had got into the narrow place.

In passing, the two cars scraped against each other, the eaves of defendant's car leaving a scratch under the eaves of the other from the third window clear back. The jar or shock of the collision threw plaintiff's hand out, which was caught between the two cars and drawn further out, and the arm received several blows from the window frames of the passing car, breaking it above the elbow.

Plaintiff was an engraver; and, by reason of this accident, was unable to do any work until six months afterwards. His arm is still weak, and he is unable to steadily apply himself to his work as he had done before the accident occurred.

The testimony was that he was a very skillful engraver; that he was able to earn from his own personal labor $5,000 per annum; that from his personal labor between July, 1880, and July, 1881, he derived only $600; that his loss in his general business, because of his inability to attend to it, was $1,800; and that his expenses for medical attendance, &c., amounted to $500 or more.

Plaintiff's counsel asked the plaintiff the following question:

*Q.* Did the accident cause any loss of income up to the present time, and if so, please state what income you lost thereby. [Objected to. Objection overruled. Exception for defendant.]

(First assignment of error.)

*A.* A very considerable loss. I will tell it in my own way. I can tell you by telling what my income has been from my book before the accident, and what it has been since.

*Q.* Tell us without giving it from your books if they don't want to see them, and don't want you to state it. Tell us what income you have lost in consequence of this accident up to the present time.

*A.* I have made as high as $10,500 in my business. I have averaged, say in five years, an income of over $7,500. My personal labor is worth $5,000 a year. After the accident—I count five months, say the accident occurred on the 26th of July, I say from the 31st of July, five months, I made nothing. The year from the 31st of July, 1880, to the 31st of July, 1881, I made $600.

*Q.* Was that out of your own labor?

*A.* My own labor.

*Q.* Instead of $5,000, which you would have made?

[The People's Passenger Railway Company v. Lauderbach.]

*A.* Yes, sir.

Also the further questions :.

*Q.* Had you any contract or engagement for engraving on hand which you were unable to perform in consequence of this accident, or not?

(Objected to. Objection overruled. Exception for defendant.)

(Second assignment of error.)

*A.* Yes, sir; I had a running contract, a very valuable one, all the work I could do for D. Appleton & Co., New York, on a work entitled, "Picturesque Palestine;" all I could possibly do. All my work is of a personal character. I have to handle all my own work myself.

*Q.* That was a running contract. Were you able to carry that out?

*A.* I did, by doing a diminished quantity. I kept it going, of course. I did the best I could. When I was home I directed my business as well as I could, and when I got to the office.

*Q.* Did you lose anything in that contract by reason of this accident? If so, how much?

*A.* That involved the largest amount of work I was doing for two years. That work lasted for fully two years. I was engaged in it at the time of the accident and fully two years afterwards all I could do.

And the further question :

*Q.* What was your loss by reason of the interference of that contract?

(Objected to. Objection overruled. Exception for defendant.)

(Third assignment of error.)

*A.* Over $5,000 the one year—for one year over $5,000.

No witnesses were called for the defendant. The Court thereupon charged the jury, *inter alia*, as follows :

"This accident is said to have occurred at that particular point by collision or rubbing together of the two cars, one on each of these roads. The plaintiff, you will understand, was a passenger, who got on at Third and Vine streets and rode out to this particular point in the car. He was seated on the end seat on the south side of the car, with his left hand against the window sill, or against the window upright, or the division between the two windows of the car. His hand, he says, was in the position with his thumb inside and his hand resting against the upright. [One of the witnesses testified that his fingers were projecting—the tips of his fingers were projecting on the outside of the car—and just at that point

[The People's Passenger Railway Company *v.* Lauderbach.]

I want to call your attention to the fact as to whether it was possible for that man to see the condition of the fingers at that time. He says that he was on the front platform of the car with the driver, and that seeing the car approaching this narrow point—either for that or for the purpose of looking at a lady and gentlemen who were inside of the car, and it is not very clear what his object was—he went to the center of the car, and that by that means he could observe the condition of the man's hand against the upright. Now, whether any one standing in the center of the car could observe whether the man's fingers were outside or not is a question which I leave to you in connection with the balance of the case—whether it was possible for him to see that.] * * * *

In order that you may reach a conclusion, it is proper for you to consider the position of these cars. There was no rule or regulation of these companies—at least in evidence—going to show by what mode this narrow point was to be crossed. [There was no rule compelling them to stop at any given point, or to regulate their passing that point in any mode whatever. It is, therefore, required by the law that it shall be done in an ordinary, reasonable, and prudent manner. Now, what that was you must judge from the evidence; and as you judge from the evidence you will settle the degree of negligence in this case, and which party is accountable.] * * *

[If the Race and Vine Street car had started and got to such a point on that narrow passage-way that it would have been likely that the car of the People's Passenger Railway would have struck or touched the car which was then going north towards Fairmount—the Race and Vine Street car—then it would be negligence on the part of the defendant's driver to run his car, or start it at that time, because it would not be reasonable and prudent care in a man to drive his car against the car of any other company, or against the Race and Vine Street car, if it had got to that point.] Hence, if the car of the People's Passenger Railway had started first, and before the Race and Vine Street car had started, then it would have been the duty of the Race and Vine Street car to have pulled up and have allowed the other one to pass along. It would not have been reasonable and prudent care, nor would it have been that extraordinary degree of care required of the carrier of a passenger, to go to such a point as that and run the risk of passing with his car with passengers in it, when he knew the other one had started. Therefore, the

real point in the case comes down to that—as to which of the parties was responsible for that negligence.

The law of the road, even driving in a wagon, is that if a man gets in a narrow cut or passage-way, the party approaching him must stop in order to let him out. In the same way it would require a man who was approaching such a dangerous point, in such a narrow cut or passage-way, to observe ordinary, and even, in carrying passengers, extraordinary care in reaching such a point and passing it. [Therefore, you are to deduce from the evidence, and to weigh the evidence pretty closely, as to that little point of time, and that little point of space, in which these two cars passed each other, to see whose duty it was to stop before they got there. Whoever's duty it was to stop would be guilty of negligence if they passed the point, and that is the degree of care which would be required of both these parties, and you must say now, under the circumstances and under the evidence in this case, which of these parties was guilty of that negligence.] And I say to you, if the Race and Vine Street car was guilty of negligence in going on as they did—guilty of that want of extraordinary care in carrying this plaintiff —then the plaintiff cannot recover of the People's Railway.

On the other hand, if the People's car started in an improper time and in an improper manner, and after the car of the Race and Vine Street road had got so near, or into this narrow passage-way, then it would be such a want of ordinary care as would make them liable for the negligence.

It gets down, therefore, to that particular narrow point, and you must weigh all the testimony in the case in considering this question. You will take not only the testimony of the plaintiff and weigh it carefully as to the probabilities of his hand being in the position in which it was, and as to his position, and the cause of the accident, [but you will also examine the plan of this road, and say, in connection with all the other evidence, (because that is part of the evidence,) what the rule of safety would be in passing this point. You are to make it, because there is no other rule or regulation of the companies or parties here by which it can be made.] 　＊　＊　＊　＊

[Therefore, I leave it to you to say whether, under the evidence in this case, the plaintiff, by his act of putting his hands or fingers in this way, if he did so, was guilty of contributory negligence.] If he was, and that contributory negligence was the proximate cause of this in-

[The People's Passenger Railway Company *v.* Lauderbach.]

jury, then he cannot recover. You will understand by that that the proximate cause of the injury is the direct cause, and not a remote one, because if it was only a condition of the accident, and not the direct or proximate cause of it, then that would not affect the rule at all, and he would be entitled to recover, because a remote contribution to the injury would not entitle the defendants to avail themselves of the rule of contributory negligence.

Now, as I have said to you, the measure of duty on the part of the passenger is that of ordinary and reasonable care on his part. He is bound to exercise ordinary and reasonable care about the way in which he manages his person in the car. If he is guilty of want of reasonable and prudent care—that is, such as a prudent man would take under ordinary circumstances, that would be contributory negligence, and would come within the ground of proximate cause, and he could not recover. [You will, therefore, say whether under all the circumstances, a reasonable and prudent man would have placed his hand in this condition where it would be liable to be struck by passing vehicles, or in consequence of a collision with anything upon the road, and that would be the ground upon which you approach the doctrine of proximate cause.] *  *  *  *  *  *

If you find in favor of the plaintiff, the rule of damages will be that he would be entitled to recover what you shall think would be a proper reward to him for the pain and suffering which he has endured in consequence of this accident, and you would add to that the expenses which he has been put to in consequence of endeavoring to be cured of the injury which he suffered — that is, medical attendance, attendants or nurses, and medicine and other things which he was obliged to use while being cured of the injury which he suffered. Thirdly, you can add to it, if you find it so, the loss occasioned by the individual loss of his ordinary labor. You are not entitled to give him what he might make by speculative business, or what he might make in consequence of contracts, or things which he might have received, or anything else of that nature, but you are to give him what was actually suffered by the loss of his individual ordinary labor—his regular labor or profession.

The defendants are not liable for anything resulting from his nervous condition, or his prior ill-health, or any weakness of his constitution which was in existence prior to or at the time of the accident. He cannot recover for anything consequent upon that.

[The People's Passenger Railway Company *v.* Lauderbach.]

There is no evidence in this case, I think, going to show that this was a permanent injury. In, fact he admits himself that his arm is as good now as it ever was, and I do not think there is any evidence by the physicians and surgeons on either side of the case going to show that it was anything more than a temporary injury, and the pain and suffering were merely temporary; that nothing followed, unless you find that the injury produced a nervous shock and nervous prostration which had not existed prior to the time of the accident. If it had not existed, and this injury produced it, that would be one of the results, and he would be entitled to recover for the loss produced by that nervous prostration and that continued weakness of his system, but not if there had existed before, or that he was liable to ill-health, or anything of that kind prior to the time of the accident. Your damages, therefore, should not be speculative at all. They should be simply compensation for the injury which has been suffered within the three heads that I have laid down to you: First, as to the pain and suffering; second, as to the expenses; and thirdly, as to the loss of business, within the rules which I have stated."

Defendants' counsel submitted certain points for charge, which, with the answers thereto, are, *inter alia,* as follows:

["*Fifth.* If the plaintiff sat with his arm on the sill of the window, and in consequence, when the cars rubbed against each other, it was protruded from the window and was injured, he was guilty of contributory negligence, and he cannot recover."]

I decline to say that, as a question of law.

(Twelfth assignment of error.)

["*Seventh.* If the plaintiff sat with his arm on the sill of the window, and suffered unconsciously his arm to slip out of the window, and he was injured, he cannot recover."]

I decline to say that, unless you find it the proximate cause of the injury."

(Fourteenth assignment of error.)

["*Eighth.* If the position of the arm on the window sill was the cause of the injury, or contributed to it, plaintiff cannot recover, and the verdict should be for defendant."]

I affirm that, if it was the proximate cause of the injury.

(Fifteenth assignment of error.)

[*Tenth.* If the evidence shows contributory negligence

[The People's Passenger Railway Company *v.* Lauderbach.]

on the part of the plaintiff he cannot recover, and the verdict should be for defendant.]

I decline that unless it was the proximate cause of the injury.  If the evidence shows that contributory negligence was the proximate cause of the injury then the plaintiff cannot recover.

(Seventeenth assignment of error.)

May 15, 1883, verdict for plaintiff for $9,000, upon which judgment was afterwards entered.

Defendant then took out a writ of error, assigning, *inter alia*, the errors above set forth, and those parts of the charge inclosed between brackets.

*Francis E. Brewster* and *Samuel Gustine Thompson* for plaintiff in error.

There is no evidence of a collision of sufficient violence to throw plaintiff's arm out of the window.  Such an accident could only occur in case of exposure of the person out of the window, in consequence of which the part exposed would be injured.  The position of the arm was the cause of the accident, and amounted to contributory negligence: Pittsburgh and Connellsville Railroad Company *v.* McClurg, 6 P. F. Sm., 295; Railroad Company *v.* Hoosey, 3 Out., 499.  Where the position is one of risk, and leads to the accident, it is contributory negligence.  There can be no difference in exposing one's person to danger whether *in* a car or *out* of it: Railroad Company *v.* Langdon, 1 Am. & Eng., R. R. Cas., 95; Downey *v.* Hendrie, 8 *Id.*, 387; Todd *v.* R. R. Co., 7 Allen, 207; R. R. Co. *v.* Rutherford, 7 Am. L. Reg., N. S., 477; Ward *v.* Central Park R. R., 1 Jones & Spencer, 396; Clark *v.* R. R., 36 N. Y., 135; Solomon *v.* Central Park Co., 1 Sweeney, 301; Baxter *v.* R. R. Co., 3 Robt., 510; Willis *v.* R. R. Co., 32 Barb., 399; Hickey *v.* R. R. Co., 14 Allen, 429; Quinn *v.* R. R. Co., 51 Ill., 498; Baltimore R. R. Co. *v.* Wilkinson, 30 Md., 225; R. R. Co. *v.* Clemmons, 55 Texas, 88; R. R. Co. *v.* Jones, 5 Otto, 443.

As plaintiff was not a passenger on defendants' car, there is no presumption of negligence.  He must prove it affirmatively: Reading *v.* Hummell, 8 Wr., 377; Baker *v.* Fehr, 10 W. N. C., 57; Goshorn *v.* Smith, 8 *Id.*, 290; R. R. Co. *v.* Schertle, 1 Out., 457.  The charge of the Court was erroneous in that it substantially left to the jury to determine what in law constituted negligence: Heil *v.* R. R. Co.. 5 W. N. C., 93.

The mere fact that the cars rubbed each other in passing was not negligence.  There was no duty on the part

[The People's Passenger Railway Company *v.* Lauderbach.]

of the defendant to stop, there being no danger to passengers unless they placed themselves in exposed positions: Heil *v.* R. R. Co., *supra*.

Where an injury occurs in consequence of mutual negligence of the two companies, the liability must be borne by the carrier: Lockhart *v.* Lichtenthaler, 10 Wr., 151; R. R. Co. *v.* Boyer, 1 Out., 100.

Speculation about business, and speculation upon contracts in that business, cannot be made the basis of plaintiff's claim for damages.

*John G. Johnson* for defendant in error.

The claim for damages was not speculative, because if the accident had not occurred, the plaintiff would have earned a certain income from a special contract. The rule is compensation. Will the equivalent of his personal labor compensate a man who, at the time he was injured, had on hand a contract, even though he would have required the assistance of his workmen, from which he would have derived a large profit which he was compelled to relinquish? In this case, however, the contract was for personal labor. It was gross negligence for a car driver to start his car when a collision with a car so placed that it could not escape being struck was inevitable. The jury found that the position of plaintiff's fingers did not contribute to the injury. There is no relevancy in the citations of cases which hold that a passenger, permitting his hand or arm to project from a window, who is struck by some outside object, cannot recover. What possible injury ought a passenger anticipate from his fingers being clasped around the window frame?

The Court, in charging the jury that if the position of the fingers was not the direct or proximate cause of the accident, it was not contributory negligence, followed Boudrou *v.* Passenger Railway Company, 92 Penna , 480; Todd *v.* R. R. Co., 7 Allen, 207.

There could have been no rubbing of the cars together without negligence. As there was no evidence that it was the duty of one of the parties to stop, it was certainly for the jury to say which of them was negligent; and the party negligent in passing was the one to be held liable. The negligent driving, and not the position of the hand, caused the accident.

March 31, 1884, the opinion of the Court was delivered by GREEN, J.:

The charge and answers of the learned judge of the court below were in the main correct, but we think there was error in some of the answers, and in the action of the court upon the subject of damages, to such an extent as to require a reversal. We refer more particularly to the answers to the defendant's seventh, eighth, and tenth points, covered by the fourteenth, fifteenth, and seventeenth assignments. The seventh point was in these words: "If the plaintiff sat with his arm on the sill of the window, and suffered unconsciously his arm to slip out of the window, and he was injured, he cannot recover." The answer was: "I decline to say that, unless you find it the proximate cause." The point was slightly faulty in not associating the projection of the arm and the injury more closely, as, for instance, by introducing the words "in consequence," after the word "injured," but such was its substantial meaning, and it was evidently so regarded both by the counsel and the Court. This is illustrated by the phraseology of the eighth and tenth points, both of which present in express words the idea that if the position of the arm was such as to occasion the injury, the plaintiff was guilty of contributory negligence and could not recover. These points were all answered alike, to the effect that the hypothetical fact in each instance would not debar a recovery unless it was the proximate cause of the injury. In our judgment, the points should have been affirmed without qualification. The points called for a purely legal determination of the effect of a given fact, which was in itself of such a character as to require such a disposition. To say that the legal result would depend upon the remoteness or proximity of the assigned cause to the actual effect, was simply to decline an expression of the legal effect of the suggested fact and pass it over to the jury, where it did not belong. If some other part of the plaintiff's body, which remained inside the car, had been injured, and not the arm, the answer of the court would have been apposite. For then a true question of remoteness or proximity would have arisen. But here it was *the protruded arm itself* which was injured, and by the hypothesis of the point the arm was in an unlawful place. It was outside or beyond the car, or, according to the eighth and tenth points, its position was the contributing cause of the injury. In either case, there was no room for the interjection of a possible remoteness or proximity of cause to effect between the specially assigned cause and the necessary direct and immediate effect flowing from it.

The only qualifying suggestion of either of the points was the unconsciousness of the projection of the arm appearing in the seventh. That circumstance, however, would not affect the legal result of the actual projection of the arm beyond the window. Whether done consciously or unconsciously, it was without right as against the carrying company. This very subject was expressly ruled in Pittsburgh and Connellsville R. R. Co. v. McClurg, 6 P. F. S., 294, on p. 299. THOMPSON, C. J., says: "Unconsciously exposing himself did not help the plaintiff's case, as it was not shown that this unconsciousness was not the result of a want of prudent attention to his situation on the part of the plaintiff." The case also ruled absolutely the proposition that where a traveller put his elbow or an arm out of a car window, voluntarily without any qualifying circumstances impelling him to it, it must. be regarded as negligence *in se;* and when that is the state of the evidence, it is the duty of the court to declare the act negligence in law. We have no disposition to change the rule thus stated, and for that reason must consider the qualified answers to the seventh, eighth, and tenth points of the defendant, in the present case, as erroneous. We would say the same as to the answer to the fifth point covered by the twelfth assignment, if the protrusion of the arm were averred as an independent fact, but the point is so framed as to render it uncertain whether the protrusion was the result of the rubbing of the cars together, or was the voluntary act of the party. On the question as to the effect of the mere resting of the arm on the window sill without protrusion, our recent decision in the case of Germantown Passenger Railway Company v. Brophy, 14 W. N. C., 213, determines that it cannot be regarded, in itself, as an act of contributory negligence, hence no discussion of that subject is needed here.

On the question of damages, the Court charged the jury quite correctly, stating the elements proper for their consideration. Especially they said that loss of ordinary labor of the plaintiff might be allowed for, but not what might be made by speculative business or in consequence of contracts entered into with others. All this was entirely correct, yet proof was admitted, under objection and exception, of loss of income from the plaintiff's business as an engraver, and also from inability to make as much as he otherwise might have made out of a certain running contract for engraving with D. Appleton & Co. Under the rulings which permitted this proof, the plain-

[Peters *v.* Wainwright *et al.*]

tiff testified that he employed others to assist him in his business; that his income from his business was as high as $10,500 in one year, and as low as $2,800 in another, and that it averaged annually, for five years, over $7,500. He also testified that on the contract with Appleton he lost over $5,000 during one year on account of the accident, though he also said he was engaged on the contract fully two years after the accident, doing all he could do. We think all of this testimony was objectionable and should not have been received. It was said by the judge, in his charge, that there was no evidence to show that the injury was permanent, and that the plaintiff admitted that his arm was as good as it ever was, and it was not pretended that there was a permanent loss of earning power. It was proved that the highest wages paid to the most skillful engravers did not exceed about $40 per week, and yet a verdict was recovered for $9,000, the time of plaintiff's enforced abstinence from work being less than six months. In view of the testimony of an objectionable character which was admitted, it is quite possible the minds of the jurymen may have been unduly affected, notwithstanding the cautionary language of the charge. It was quite proper to prove the loss of earning power, as that is an element of damage which may be considered, but the loss of income, which means profits of a business fluctuating so widely, and of possible profits on a special contract, cannot be regarded as a legitimate basis of recovery. We, therefore, sustain the first, second, and third assignments, and on these and the fourteenth, fifteenth, and seventeenth assignments,

The judgment is reversed and a *venire facias de novo* awarded.