Spear, J.
It is apparent from the testimony of the plaintiff himself, that a presumption arises that his arm, or a portion of it, at the time of the *102 accident, extended out beyond the bars, and this presumption is strengthened by the character of the injury and by the absence of any showing that the bars themselves, or any part of them, were struck by the blow by which the arm was broken. The only question being that of contributory negligence on the part of the plaintiff, this state of facts presented the question, as a matter of law, whether or not it is negligence for a passenger to purposely and unnecessarily extend his arm out of the window beyond the side of the ear. This question, as already stated, was adjudged in one way by the common pleas court and in the contrary way by the circuit court. To determine which of these views is the correct one is the question before this court.
The precise question has not heretofore been presented to this court with respect to passengers upon electric cars, nor do we find many cases bearing close relation to this one in other jurisdictions. There are, however, many decisions involving like accidents upon cars propelled by steam, which have disclosed a diversity of opinion between courts of different states. Speaking in general terms, it may be stated that projecting an arm out of the window of a steam railroad car is held’ to be • negligence per se by courts of last resort in the states of Massachusetts, Pennsylvania, Maryland, Indiana, Virginia, Kentucky, West Virginia and Alabama, and by some text-writers of excellent standing, while the contrary doctrine, i. e., that it is a question to be determined by the facts of each case, and therefore always for the jury, is held in Wisconsin, Louisiana and North Carolina, and by some text-writers of respectable *103 standing. The reasoning in support of the holding of negligence per se is well stated by Thompson, J., in The P. & C. R. Co. v. McClurg, 56 Pa. St., 294, thus: “When a passenger on a railroad purchases his ticket it entitles him to a seat in the cars. In the seat, no part of his body is exposed to obstacles outside of the car. Pie is secure there, ordinarily, from any contact with them. Where he is thus provided with a seat, safe and secure in the absence of accident to the train, and the carrier has a safe and convenient car, well conducted and skillfully managed, his duty is performed towards the passenger. The duty of the latter on entering arises, namely, that he will conform to all the reasonable rules and regulations of the company for occupying, using and leaving the cars; and, after doing so, if injury befall him by the negligence of the carriers, they must answer; if he do not so conform, but is guilty of negligence therein, and is injured, although there may be xxegligence on part of the carrier, their servants and agents, he can not recover. * * * A passenger, on entering a railroad car, isoto be presumed to know the use of a seat, and the use of a window; that the former is to sit in, and the latter is to admit light and air. Each has its separate use. The seat he may occupy in any way most coxnfortable to himself. The window he has a right to enjoy — but not to occupy. Its use is for the benefit of all, not for the comfort alone of him who has by ac’cident got nearest to it. If, therefore, he sit with his elbow in it, he does so without authority; and if he allow it to protrude out, and is injured, is this due care on his part? He was not put there by the carriers, *104 nor invited to go there; nor misled in regard to the fact that it is not a part of his seat, nor that its purposes, were not exclusively to admit light and air for the benefit of all. His position is, therefore, without authority. His negligence consists in putting his limbs where they ought not to be, and liable to be broken, without his ability to know whether there is danger or not approaching. In a case, therefore, where the injury stands confessed, or is proved to have resulted from the. position voluntarily or thoughtlessly taken, in a window, by contact with outside obstacles or forces, it can not be otherwise characterized than as negligence, and so to be pronounced by the court. This is undoubtedly the rule in Massachusetts: Todd v. The Old Colony Railroad Co., 3 Allen, 21; and again in 7 Allen, 207.” In P. & C. Railroad Co. v. Andrews, 39 Md., 329, the holding is: “If a passenger of mature years, voluntarily or inattentively projects his elbow or arm out of the window of a railroad car in which he is traveling, and it is injured by coming in contact with a freight car standing on a siding near the main track of the railroad, he -is not entitled to recover damages for such injury from the railroad company. The placing of his arm out of the window is an act of contributory negligence on his part, and the court should so instruct the jury, as matter of law, notwithstanding the company may have been guilty of negligence in permitting the car on the siding to be placed too near the track of the passing train.” In Ga. Pac. Railway Co. v. Underwood, 90 Ala., 49, it is observed in the opinion by McClellan, J., that: “This question is an open one in Alabama. We are, however, sat *105 isfied with the rule as formulated and supported by the great number of adjudged cases, and the texts to which we have referred. The reasons upon which they base the doctrine appear to be eminently sound. Windows are not provided in cars that passengers may project themselves through or out of them,* but for the admission of light and air. They are not intended for occupation, but for use and enjoyment without occupation. No possible necessity of the passenger can be subserved by the protrúsion of his person through them. Neither his convenience nor comfort requires that he should do so. It may be, doubtless is, true, that men of ordinary prudence and care habitually lean upon, or rest their arms upon the sills or windows by which they ride. But this is a very different thing from protrusion beyond the outer edge of the sills, and beyond the surface of the car. We can not concur in the assumption of the Wisconsin court, that prudent men are habitually given to thus projecting themselves from the windows of moving trains. Judge Thompson, 'who evinces an inclination to agree with that court, fails to indorse this assumption as to the habits of prudent men, which is the key-stone to the position announced by -it. He says: ‘It is perhaps not too strong a statement, that no person ever traveled on a railway train without at some time resting his arm on the window-sill at least, if not permitting it to protrude slightly. Conduct which is universal, is necessarily that of persons reasonably prudent’ (Thompson Carr. Passengers, p. 258). But the conduct which is assumed by him to be universal, is that of resting the arm on the sill, not *106 permitting it to protrude even slightly' beyond. The former, prudent men may do; but we can not conceive that the latter is an act which a man of reasonable care and prudence would ever voluntarily do, much less that it is the habit of such men to so act. The former, under ordinary circumstances, is not negligence. The latter, according to the overwhelming preponderance of authority, based on sound reason, as we conceive, standing by itself, is always negligence per se, which will defeat a recovery for any injury to which it proximately contributed.” The holding of the court is that: “It is negligence per se, to be so declared by the court as matter of law, for a passenger on a steam railway to protrude his arm, hand or elbow through the window of the car while in motion, beyond the outer edge of the window, or outer surface of the car; and such negligence on his part, contributing proximately to an injury received by collision with an object passing near by, bars a recovery for damages.”
As before stated the.opposite doctrine is maintained in a number of decisions. Probably that contention is not better stated than by Cole, J., in Spencer v. The M. & P. du C. R. R. Co., 17 Wis., 487. We quote: “The party must be entirely free from negligence which contributes to the injury, and it was for the jury to say, under all the circumstances, whether the plaintiff was wanting in care and attention or not. This, it is obvious, must be so, unless the court is authorized in saying, as a matter of law, in every case, that a person who extends his hand or arm in the slightest degree out of the window of a railroad car, while the train is in motion, is chargeable with *107 negligence, and can not recover damages if injured while in this position by the carelessness and negligence of the agents and servants of the company. Can the court lay down any such fixed, unbending rule, which is applicable to all cases and all circumstances? It appears to us clearly it can not. And certainly, when we consider the manner in which railroad cars are usually constructed, with the windows so that they can be opened, and arranged at a sufficient height from the seat so that passengers will almost unconsciously place their arms upon, the sill for support, there being no bars or slats before the window to prevent their doing so, then to say that if a passenger’s arm extends the slightest degree beyond the outside surface, he is wanting in proper care and attention, and that if an injury happens, he can not recover, because his conduct must have necessarily contributed to the result, appears to us to be laying down a very arbitrary and unreasonable rule of law. It is probably the habit of every person while riding in the cars to rest the arm upon the base of the window. If the window is open, it is liable to extend slightly outside. This we suppose is a common habit. There is always more or less space between the outside of the car and any structure erected by the side of the track, and must. necessarily be so, to accommodate the motion of the car. Passengers know this, and regulate their conduct accordingly. They do not suppose that the agents and managers of the road suffer obstacles to be so placed as barely to miss the car while passing. And it seems to us almost absurd to hold that, in every case and under all circumstances, if the party injured had his arm *108 the smallest fraction of an inch beyond the outside surface, he was wanting in ordinary care and prudence.”
The C. & A. R. R. Co. v. Pondrom, 51 Ill., 333, is hardly in point because the rule of comparative negligence, not recognized in Ohio though then held in Illinois, is applied to the facts. The court seems to have regarded the act of the passenger in permitting his arm to slightly project outside of the window as a negligent act, slight, however, in comparison with the gross negligence of the company in permitting its freight cars, or other permanent bodies, to stand so near its tracks that passing trains would come within a few inches of such bodies, and for this reason the judgment was allowed to stand.
Other holdings of like import with that of the Wisconsin case are found in the reports of courts of last resort in the states of Louisiana and North Carolina, and some text-writers follow these cases. In this conflict of authority it would be useless to attempt to reconcile the differing decisions. We are, however, of opinion that the weight of judicial expression is with the conclusion of negligence per se where the passenger unnecessarily and heedlessly protrudes his arm beyond the window. And, after much consideration and reflection, we are also of opinion that this conclusion is supported by the sounder reasoning. The quotations hereinbéfore given from the Pennsylvania and Alabama cases adequately, and, as we think satisfactorily, support the conclusions of those courts. It is not intended to abate or modify the rule that the common carrier is bound to exercise the utmost practicable care and diligence to secure *109 the safety of the passenger, but a duty of reasonable care as well rests upon the passenger himself. He must not heedlessly expose himself to danger, but is as much required to use reasonable care to avoid injury as the carrier is to use the greatest degree of care to protect the passenger. He must not voluntarily expose himself to needless peril. If of ordinary intelligence, the traveler knows the mode in which railroads are constructed, and the rapid rate at which trains move. He knows that on the outside are posts and barriers near to the track, and that where there is a double track, cars operated at a rapid rate are constantly passing in close proximity. With this knowledge on the part of the passenger it must be obvious that the extension of any part of his body on the outside of the car is attended with more or less risk, more or less danger. It may be debatable as to the extent of the danger under differing circumstances, but it can not admit of debate that the act is risky and invites danger. It is not a case where it ought to be said that different minds may reach different conclusions, and therefore presents a situation requiring the submission of the question of negligence or no negligence in the abstract to a jury, because such requirement exists only where different reasonable minds may reasonably differ. Nor is the objection met by the proposition that many people thus expose themselves. Many people who travel are all the time taking needless risks, but it does not follow that the taking of such risks is the habit of ordinarily prudent people. Persons are constantly jumping ón and off of cars while in motion, and many alight with their faces to the *110 rear of the car. So, too, it is within the observation of all who have watched the management of trains, especially in the 'neighborhood of railroad yards, that persons ride on the cowcatcher or pilot even on trains running rapidly, and many of our fellow-citizens, usually those in humble station it is true, ride constantly on the bumpers of freight cars. But this does not make such acts the conduct of ordinarily prudent persons. That any of these acts have or not contributed to any injury received by the passenger in the given instance, admits of debate, and thus makes it proper to submit the question to a jury, but that they are negligent acts in themselves involving more or less risk can not rationally be disputed. Negligence is said to be such an inadvertent imperfection, by a responsible human agent, in the discharge of duty, as naturally may produce damage, and these acts are negligent acts because it is the duty of every human being to protect himself. Any act, therefore, which subjects the doer of it to unnecessary danger is a breach of that duty and in the last analysis is negligence. In failing to give proper effect to these considerations, the reasoning of the court in the Wisconsin case, and in the cases which have followed it, appears to us to be at fault; the duty of the passenger possessing intelligence which enables him to foresee and avoid danger, and to exercise ordinary prudence to escape it, seems not to have been given due weight. And even in the Wisconsin case, as appears by the language of the learned judge who delivered the opinion, if there had been bars or slats before the window, the judgment might have been different. So that, *111 should our conclusion on the abstract question of negligence be thought unsound, it is to be noted as of importance that our case is differentiated from the Wisconsin and other like cases in that in the case at bar there were bars across the window at the time of the accident..
Assuming, therefore, that the rule respecting the conduct of a passenger on a steam car is to forbid his extending his arm out of the car window without himself assuming the risk of injury, should a different rule be applied to a passenger on an interurban electric car? We are of opinion that there should not be. As such cars are now operated throughout the country they run at a rapid rate. Their. construction ordinarily, if not necessarily, involves the maintenance near the tracks of poles and barriers of various kinds. Cars running in opposite directions, as well on switches as where there is a double track, are often necessarily run near together. There is, perhaps, more necessity for locating tracks near together inside of municipalities than in the open country, and upon narrow streets it often happens that the company is required to lay the rails at less distance apart than they would prefer to place them, because.of crowded conditions and the requirements of the municipal authorities. To say that, as. a rule of law, a passenger on such car may be heedlessly negligent, exposing his person to needless danger, and visit the consequences on the interurban company upon showing negligence on its part, appears to us to be without reason. Nor is it supported by authority. On the contrary the generally recognized rule is that the passenger can not cast upon the carrier re *112 sponsibility for an event, which, except for his own contributing negligence, would not have happened, and the law, as always held in this state, does not undertake, when both parties have been negligent, to measure the degree of the negligence of each. And we are of opinion that no substantial reason exists why these sanie rules of care and. of ' responsibility in the particulars stated imposed upon the passenger in the steam car ought not to be held to apply to the same passenger in an electric interurban car. We find but few reported cases arising from accidents of this character occurring on street cars. The case nearest in point to which attention has been called is that of The Peoples’ Pass. Ry. Co. v. Lauderbach, 4 Penny., 406. The injury occurred by the plaintiff’s arm being struck by a street car passing the car on which the plaintiff was riding, the claim of the company being that his arm protruded out of the car window. It was held that “where a traveler puts his elbow or an arm out of a car window voluntarily, without any qualifying circumstances impelling him to it, it must be regarded as negligence in se; and where this is the state of the evidence, it is the duty of the court to declare the act negligence in law.”
It was sought to support. the plaintiff’s case below by proof that many other people extended their arms out. Probably so. But we are unable to see how this sort of testimony ought to determine the question of ordinary care. Probably an equal number did not so extend their arms. If this kind of testimony may be resorted to, where would the inquiry end? And would the dispute be determined by showing on which side there was a majority?
*113 Recurring again to the evidence, it appears that there were four rods or bars across the windows of the car, including the one in question, and that the highest rod was a foot above the window-sill. It was upon the top rod or bar that plaintiff rested his arm. The purpose of these rods is in dispute. It would seem that, whatever other purpose they might subserve, if any, they were calculated to warn the passenger to keep his person inside the car. It is urged that they were placed there to keep packages and children from falling out. They might serve, in a measure, to further these objects; but passengers’ arms are of more consequence than packages, and a warning to children might with equal propriety be heeded by adults. Again it is urged that they were placed outside the window to protect it. If that were the object the wonder is that they were not continued higher up. Again it is insisted that they constituted an invitation to the passenger to rest his arm upon the- upper one. As well might it be urged that the bar or strap found on summer cars, extending on one side from one end to the other, and whose manifest object has been always supposed to be to keep passengers from alighting on that side, and others from entering, is after all, not for those purposes but for the purpose of affording the passenger a convenient resting place for his arm. The proposition surely lacks reason.
Coming now to the charge, it is to be noted that the court' left to the jury the matter of the location of the bars, the question of whether or not the plaintiff permitted his arm or any part of it to extend out beyond or over the bars, and *114 whether or not that act contributed to the accident, holding that if all those propositions were found affirmatively then and in such case there could be no recovery. If we are correct in the deductions hereinbefore made respecting the duty of the passenger, then this charge properly stated the rule of law, and the giving of it to the jury was not error. We think the charge was correct and that in reversing the judgment of the common pleas because of this instruction the learned circuit court erred. The judgment of that court will be reversed and that of the common pleas affirmed.

Reversed.

Sitauck, C. J., Price, Crew, Summers and Davis, JJ., concur.